UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MARIAN WYNNE, | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) | No. 1:16-cv-260-TRM-SKL |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Marian[1] Wynne ("Plaintiff") brought this action pursuant to 42 U.S.C. 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI"). Each party moved for summary judgment [Docs. 16 & 21] with supporting briefs [Docs. 20 & 22]. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment be **DENIED**; (2) the Commissioner's motion for summary judgment be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

**I.    ADMINISTRATIVE PROCEEDINGS**

As reflected in the transcript and supplemental transcript of the administrative proceedings [Doc. 7 & 11 ("Tr.")], Plaintiff applied for SSI on April 15, 2013, alleging disability beginning March 1, 1985 (Tr. 142). After Plaintiff's claims were denied initially and upon reconsideration, a hearing on Plaintiff's claims was held before an administrative law judge ("ALJ") during which Plaintiff was represented by counsel (Tr. 463-501). Prior to the hearing, Plaintiff amended her alleged onset date to April 1, 2013 (Tr. 152). The ALJ issued a decision

---

[1] Regularly in the record, Plaintiff's first name is spelled "Marrian," rather than "Marian," but Plaintiff's name is listed here as it was presented in her complaint [Doc. 1].

on December 17, 2015, finding that Plaintiff was not under a "disability" as defined in the Social Security Act ("Act") (Tr. 9-21). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action [Doc. 1].

## II.   FACTUAL BACKGROUND

### A.   Education and Employment Background

Plaintiff, who was born in 1965, completed the eleventh grade, and received special training as a nurse's aide (Tr. 153,158, 472). Plaintiff worked as a cashier from 1980 to 1985, but had no earnings since that time (Tr. 147-48, 158). Instead, as documented in the ALJ's decision, Plaintiff assisted her husband with painting jobs for approximately 20 years until he became disabled, but was not paid for that work (Tr. 15, 472-73, 488-89).

### B.   Medical Records

Plaintiff alleged disability due to post traumatic stress disorder ("PTSD"); heart problems; chronic pain in her back, neck, and legs; depression; rheumatoid arthritis; and chronic obstructive pulmonary disease ("COPD") (Tr. 157). The ALJ extensively summarized various medical records and both parties summarized portions of the pertinent medical records in their respective briefs. The summary of the records will not be repeated herein, but all germane records concerning the mental limitations at issue in this case have been reviewed.

### C.   Hearing Testimony

At the hearing before the ALJ, Plaintiff and a vocational expert ("VE") testified. The transcript of the testimony at the hearing has been carefully reviewed.

2

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since April 12, 2013, the application date (Tr. 11). At step two, the ALJ found Plaintiff had the following severe impairments: osteoarthritis, asthma/emphysema, depression and PTSD (Tr. 11-12). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 12-14). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light unskilled work with additional limitations (Tr. 14-20). At step four, the ALJ found that Plaintiff had no past relevant work (Tr. 20). At step five, after considering Plaintiff's age, education, work experience, and RFC, and the testimony of the VE, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 20-21). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined by the Act at any time since the application date (Tr. 21).

### IV. ANALYSIS

Plaintiff argues only that the ALJ "ran afoul of the treating physician rule" because the "reasons for discarding and discounting" the opinion of her treating psychiatrist, Alex Fider, M.D., are not supported by substantial evidence [Doc. 20 at Page ID # 567-68]. The government made well-supported and extensive arguments to the contrary [Doc. 22].

4

### A.  Standards of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009)

5

(stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record.[2] *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). The ALJ must determine which medical findings and opinions to credit and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). A court will not disturb an ALJ's RFC determination as long as the finding is supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### B. Treating Source Opinions

With respect to the medical source opinions concerning mental impairment, the ALJ found Plaintiff:

---

[2] A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

6

experienced depression and post-traumatic stress disorder. However, the record does not support the claimant's description of the severity of her mental impairments as outlined above. On December 12, 2013, the claimant attended a psychological clinical evaluation with David Thompson, M.A. and Kathryn Smith, Ph.D. concurred. A mental status examination showed that the claimant's behavior was mildly anxious and depressed; her thought processes were organized and goal directed; her insight was intact; judgment was good; she was oriented in all spheres; she had good short-term memory, and attention and concentration; and she had a good fund of knowledge. Another mental status examination on February 5, 2014, by [Plaintiff's treating physician,] [Lynette] Adams, [M.D.,] showed that the claimant was oriented, had normal mood and judgment and had no memory problems.

Further, a mental status examination on January 5, 2015, performed by the claimant's treating psychiatrist, Alex Fider, M.D., revealed findings that were generally consistent with the other mental status examinations in the file. The examination demonstrated that the claimant was alert; had coherent speech; was oriented to name, date, place and situation; was clean; had a normal mood, with some anxiousness and depression; had normal immediate, short and remote memory; had normal intelligence; and had adequate judgment. Dr. Fider even stated that the claimant's treatment was making her better. The claimant confirmed this by testifying that her mental health medication was effective in helping her symptoms. Still, in giving the claimant the benefit of the doubt, the undersigned finds that the claimant has some limitations in her ability to sustain concentration, understand instructions, interact with others, keep up with production and handle change.

(Tr. 17-18) (citations to exhibits omitted). The ALJ also noted:

> The State agency psychologists, Edward Sachs, Ph.D. and M. Duncan Currey, Ph.D., opined that the claimant had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. They further opined that the claimant could interact infrequently with the general public, meet basic social demands in a work setting and adapt to gradual or infrequent changes.

(Tr. 19) (citations to exhibits omitted).

7

After addressing and assessing Plaintiff's record of global assessment of functioning scores, the ALJ turned to the July 2015 note of Dr. Fider, who opined Plaintiff could not work due to her several mental impairments (Tr. 19, 323). The ALJ correctly noted that in a "Mental Assessment of Functioning" form dated July 2015, Dr. Fider opined Plaintiff would miss three or more days per month or 36 or more days per year of work (Tr. 19, 449). The ALJ correctly noted Dr. Fider also opined Plaintiff had a noticeably worse, clearly worse or completely unreliable ability to do the following: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine; work in coordination with or in the proximity of others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; deal with ordinary work stress; and maintain attention for two-hour segments (Tr. 19, 449). Dr. Fider also attached literature to this form and stated that Plaintiff's PTSD could become chronic and could last for 30 years (Tr. 450-453). Dr. Fider assessed Plaintiff with a "life events score" of 207, which he stated indicated a disabling condition (Tr. 450). He also noted Plaintiff was afraid to drive due to a motor vehicle accident in 1985, and had to be brought to the mental health clinic by her husband or friend (Tr. 450).

Regarding the weight the ALJ gave the various medical opinions noted above concerning Plaintiff's mental impairments, and in light of Plaintiff's "regular almost monthly counseling and medication treatment with Dr. Fider, and giving [Plaintiff] the full benefit of the doubt," the ALJ found Plaintiff more limited than opined by Mr. Thompson and Dr. Smith (Tr. 18-19). The ALJ accorded only partial weight to their opinions (Tr. 18-19). The ALJ found the opinions of Drs. Sachs and Currey were generally consistent with Plaintiff's "longitudinal record of counseling

and psychiatric medications that well controls [Plaintiff's] symptoms and supported by the examining psychological evaluators, Mr. Thompson and Dr. Smith who found that the claimant was slightly to moderately limited in her ability to sustain concentration and persistence, interacting with others and adapting to changes and requirements." (Tr. 19) (citations to exhibits omitted). Again after noting that he was giving Plaintiff "the full benefit of the doubt," the ALJ found her to be more limited than found by the state agency psychologists and accorded their assessments only partial weight as a result (Tr. 19).

The ALJ, however, also found the course of treatment pursued by Dr. Fider was not consistent with the level of disability Dr. Fider himself had reported (Tr. 19). In support of this finding, the ALJ noted Plaintiff's treatment had only been medication management and counseling, which Plaintiff admitted had been effective in reducing her symptoms (Tr. 19, 478). In addition, the ALJ found "Dr. Fider's opinion contrasts sharply with the other evidence of record, including his own mental status examinations, which were essentially normal, but for some depression and anxiety, thus rendering his opinion less persuasive. The record or his own treatment notes do not support Dr. Fider's assessments; therefore, the [ALJ] accords it little weight." (Tr. 19-20).

In considering a claim for disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. § 404.1527(c)(2). But the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*. If the opinions at issue are not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give the opinions: "the length of the treatment relationship and the frequency of examination, the nature and extent of the

9

treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source[.]" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)).  The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion.  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) (the ALJ must give "good reasons" in the notice of determination or decision "for the weight . . . give[n to the] treating source's opinion.").

A properly balanced analysis, as was performed by the ALJ in this case, can allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians.  *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").  It is not error to ascribe more weight to a non-examining or examining physician than to a treating physician in appropriate cases.  *See, e.g., Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (observing that "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources" (citing SSR 96–6p, 1996 WL 374180, at *3); *Norris v. Comm'r of Soc. Sec*., 461 F. App'x 433, 439 (6th Cir. 2012) ("Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record.").

First, as to Dr. Fider's statement that Plaintiff's mental conditions "caused her not to be able to work" (Tr. 323), this is not a medical opinion.  As argued by the Commissioner, it is an

administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 416.927; SSR 96–5p; *See Johnson v. Comm'r of Soc. Sec.,* 535 F. App'x 498, 505 (6th Cir. 2013) (citing SSR 96-5p).

Second, as argued by the Commissioner regarding the remainder of Dr. Fider's opinions, the ALJ found Dr. Fider's course of treatment for Plaintiff's mental impairments was inconsistent with the limitations he assessed (Tr. 19-20). An ALJ may properly consider whether the treatment is comparable to the degree of limitations alleged and whether treatment effectively controls the symptoms. *See* 20 C.F.R. § 416.929(c)(3); SSR 16-3p. The ALJ supported his findings by noting that Plaintiff received medication management and counseling, which she admitted had been effective in reducing her symptoms (Tr. 17, 19, 478). When asked about her mental condition and whether she had "gotten better, gotten worse, or stayed the same with the treatments" she received, Plaintiff testified, "They help me. I don't stay as depressed as I do without them." (Tr. 478).

As noted by the Commissioner, between December 2012 and May 2015, Dr. Fider prescribed low doses of antianxiety medication, mood stabilizer medication, and a sleep aide, with only a slight increase in Plaintiff's dosage during that time. Dr. Fider noted Plaintiff repeatedly reported feeling better and having decreased panic attacks given the efficacy of her treatment or occasionally Dr. Fider left this line off of the form blank altogether (e.g., Tr. 326, 328, 330, 332, 334, 336, 338, 340, 342, 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365, 367, 369). As argued by Plaintiff, these forms also contain check marks signifying problem indicators such as depression, anxiety, and auditory hallucinations (*id.*). During the pertinent time period, however, Plaintiff did not see a psychologist or other mental health therapist, and had never been hospitalized or received emergency room treatment because of her mental conditions (Tr. 477, 484). Plaintiff testified she received counselling from Dr. Fider during 60- to

11

90-minute sessions with him at her visits every other month (Tr. 477, 485-86), and thus argues she received "a significantly escalated level of care" directly from him [Doc. 20 at Page ID # 569]. However, Dr. Fider's treatment records mostly consist of short, generally illegible notations and a completed check-marked form, lacking any sort of extensive psychotherapy or counselling notes that support his opinion.

The ALJ also considered that Dr. Fider's mental status examinations were essentially normal except for some depression and anxiety (Tr. 20, 324-76). For example, although Dr. Fider opined Plaintiff's ability to perform at a consistent pace without an unreasonable number and length of rest periods was "completely unreliable," his treatment records documented no problems with attention span, distraction, or finishing tasks on time as argued by the Commissioner (Tr. 326-369). Further, Dr. Fider's treatment notes indicate Plaintiff reported hearing voices (e.g., Tr. 326, 328, 330, 332, 334, 336, 338, 340, 342, 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365, 367, 369), but Plaintiff did not allege auditory hallucinations in her application for disability or at the administrative hearing and specifically denied any such hallucinations to her primary care physician and the consultative examiner (Tr. 221, 232).

The ALJ also considered that Dr. Fider's opinion differed from other evidence in the record (Tr. 20). For example, a psychological evaluation in December 2013 concluded Plaintiff was not limited in her ability to understand and remember; slightly limited in her ability to sustain concentration and persistence; moderately limited in her ability to interact with others; and moderately limited in her ability to adapt to changes and requirements (Tr. 18-19, 223). The ALJ also noted that mental status examinations by Plaintiff's primary care provider showed normal mood and judgment, and no memory problems as argued by the Commissioner (Tr. 17, 250). Moreover, in August 2013, Plaintiff's psychiatric problems were noted to be managed

with medication by her primary care physician (Tr. 232). While in April 2014 Plaintiff reported increased depression, in subsequent monthly visits through March 2015, depression is not noted (Tr. 258-90).

In addition, the ALJ found Dr. Fider's assessed limitations were inconsistent with Plaintiff's reported activities (Tr. 20). For instance, Dr. Fider opined that Plaintiff's ability to maintain attention for two-hour segments was "completely unreliable," but Plaintiff testified she spent her evenings watching movies and reading (Tr. 15, 483-84). Again, although Dr. Fider indicated Plaintiff's ability to interact with supervisors was "completely unreliable," Plaintiff reported no problem getting along with others in her Function Report (Tr. 200). Moreover, the ALJ limited her to work that did not require contact with the public to accommodate this concern (Tr. 14).

Dr. Fider stated that Plaintiff's "life events score" of 207 indicated a disabling condition of psychosomatic disorder, but the literature he attached to his opinion does not appear to support this conclusion (Tr. 450-53) for the reasons argued by the Commissioner [Doc. 22 at Page ID # 581-82]. For example, there is no record evidence that Plaintiff was fired at work or lost a close family member in 2015. Thus, the record does not support Dr. Fider's assessment of a disabling "life events score" in a single year.

While an ALJ may discount a medical source opinion that is not supported by the evidence, s*ee* 20 C.F.R. § 416.927(c)(4), the ALJ did not completely reject Dr. Fider's opinions; rather, he properly incorporated those limitations he found to be supported by the record. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.4 (6th Cir. 2009). The ALJ properly discussed the evidence he considered, noting not only the medical source statements but also Plaintiff's medical history, the effects of treatment, the reports of daily activities, and other

13

observations. These are all the appropriate types of relevant evidence that the ALJ must consider in evaluating medical opinions and formulating an RFC. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ's also properly described sufficient evidence for his RFC determination and good reasons supporting his evaluation of the medical evidence and Dr. Fider's opinions.

An ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform a reduced range of light work. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence. Because the ALJ reached his decision using correct legal standards and because those findings are supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *See, e.g., Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (internal quotation marks omitted)).

Accordingly, the ALJ's decision must be affirmed and Plaintiff's arguments to the contrary fail.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[3] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 16] be **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 21] be **GRANTED**; and

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).